**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHN M. TOWNSEND,  )
      Plaintiff,  )   3:06-CV-00470-LRH (VPC)
      vs.  ) **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**
ADAM ENDEL, *et al.*,  )
      Defendants.  )   July 7, 2008

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#19). Plaintiff opposed (#23) and defendants replied (#24). The court has thoroughly reviewed the record and the motions and recommends that defendants' motion (#19) be granted.

### I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff John M. Townsend ("plaintiff"), a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#8). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his First, Eighth and Fourteenth Amendment rights (#7). Plaintiff names as defendants Adam Endel, ESP Associate Warden of Programs; Silvia Irwin, ESP caseworker; Dr. Steven MacArthur, former ESP physician; Dwight Neven, ESP Associate Warden of Operations; and John Does 1-9. *Id*.

In count I, plaintiff alleges that defendants violated his Fourteenth Amendment right to access to the courts by seizing legal documents from his cell during a September 16, 2004 "shakedown." *Id*. at 4. In count II, plaintiff also alleges a violation of his right to access to the courts when, sometime between September 1 and October 31, 2004, NDOC staff opened and seized legal mail from plaintiff to his attorney which contained documents supporting his habeas corpus petition. *Id*. at 5. In count III, plaintiff alleges that defendant MacArthur violated his

Eighth Amendment right against cruel and unusual punishment by ordering that plaintiff stop receiving migraine medication without examining plaintiff. *Id*. at 6. In count IV, plaintiff alleges that defendants violated his First Amendment right to free speech during the September 16, 2004 shakedown by removing literature and newspaper and magazine clippings. *Id*. at 6A.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

2

1   the party opposing the motion may not rest upon mere allegations or denials in the pleadings but
2   must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477
3   U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for
4   discovery, against a party who fails to make a showing sufficient to establish the existence of an
5   element essential to that party's case, and on which that party will bear the burden of proof at
6   trial. *Celotex*, 477 U.S. at 322-23.

   **B.  Analysis**

   **1. Count I**

   Plaintiff alleges that on September 16, 2004, there was a general "shakedown" of his unit, and his cell was "ransacked and left looking like it had been hit by a tornado" (#7, p. 4).  Plaintiff contends that defendants confiscated clearly marked legal work, documents, and exhibits, and as a result, he had to abandon a medical malpractice claim and a civil rights claim.[1]  *Id*.

   Defendants argue that plaintiff cannot show that he suffered "actual injury" resulting from defendants' confiscation of legal papers from his cell on September 16, 2004 (#19, p. 8).[2] Pursuant to the First and Fourteenth Amendments, inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  To have standing to

---

[1] In both counts I and II, plaintiff clearly states that he is alleging that defendants violated his "right to effective access to the courts, guaranteed by the ... Fourteenth Amendment" (#7, pp. 4-5).  However, in the fact sections in his complaint, his discovery responses, and his opposition, plaintiff claims that NDOC failed to follow case law and its own regulations mandating that prison staff provide unauthorized property notices each time property is removed from an inmate's possession. *Id*.  In count II of his complaint, plaintiff additionally alleges in the fact section that NDOC violated their regulations by opening his legal mail outside his presence.  In other words, plaintiff appears to argue that defendants violated his due process rights by failing to follow their own regulations.  It is true that prisoners may not be deprived of liberty or property without receiving minimum due process procedures.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, nowhere has plaintiff alleged a violation of his Fourteenth Amendment right to due process.  The court is familiar with the plaintiff, and understands him to be an experienced *pro se* litigator, as he has filed a number of actions in the past; thus, the court believes that plaintiff is aware of how to allege claims.  The court will address only plaintiff's access to the courts claims in counts I and II.

[2] Before defendants individually address each of plaintiff's counts, they argue that plaintiff has failed to produce *any* evidence at all in opposition to the motion for summary judgment, and that the court would be justified in simply granting their entire motion on this basis.  The court declines to do so; however, the court reminds plaintiff he has other cases pending before this court and that his claims can be summarily dismissed should he fail to provide any evidence in response to a dispositive motion, as he has done in the present case.

3

1  assert such a claim, an inmate must demonstrate "actual injury," in that there was a "specific
2  instance" in which he was denied access or prevented from pursuing a non-frivolous legal claim.
3  *Lewis v. Casey*, 518 U.S. 343, 349-53 (1996). "The injury requirement is not satisfied by just any
4  type of frustrated legal claim;" the Court has stated that prisoners have a right to access to the
5  courts only in relation to direct appeals from the convictions for which they were incarcerated,
6  habeas petitions, or civil rights actions challenging the conditions of their confinement. *Id*. at
7  354-55.

8  NDOC Administrative Regulation ("AR") 711 defines "contraband" as any item or article
9  not authorized by the regulations, any item or article that poses a serious threat to the safety and
10 security of the institution, and "any authorized property that has been altered" (#19, Ex. D, p. 40).

11 Plaintiff testified during his deposition that at the time of the cell shakedown, he had a
12 yellow tub and a fire retardant box, both of which both contained personal property (#19, Ex. A,
13 p. 3). His legal materials were spread between a second fire retardant box and approximately
14 eight copy boxes. *Id*. at p. 15. Defendants allegedly took photographs, pictures of celebrities,
15 legal documents and exhibits, product literature, and newspaper and magazine clippings on
16 electronics and similar topics. *Id*. at pp. 6-10, 13, 20. Plaintiff admits that he does not index or
17 inventory his clippings, *i.e.*, his "legal documents," stating "it would be a massive list." *Id*. at pp.
18 14, 17. He testified that he keeps his "stuff" either "in code" or "as much in [his] head as
19 possible" to protect against defendants discovering a written list of his items during a search and
20 using it against him. *Id*. at p. 19. Plaintiff also testified that he does not know exactly what was
21 taken during the shakedown. *Id*.

### a. Medical Malpractice Claim

23 In written discovery, plaintiff stated that defendants took two envelopes containing
24 medical exhibits and prescription records that were legal documents to support a medical
25 malpractice claim that he had to abandon (#19, Ex. B, p. 25). Defendants contend that a medical
26 malpractice claim is not sufficient to meet the "actual injury" requirement (#19, p. 9). In *Lewis*,
27 the Court stated:

28 > *Bounds* does not guarantee inmates the wherewithal to transform

4

> themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. Because it is a tort claim, a medical malpractice claim is more akin to a "slip-and-fall" cause of action than a constitutional claim; therefore, even abandonment of such a claim is not an actual injury as defined in *Lewis*.[3]

### b. Civil Rights Claim

Plaintiff also alleges that defendants took envelopes containing roughed out section 1983 complaints and supporting case law, and, if not for the 2004 shakedown, his 1983 complaint would have been filed by early 2005 (#7, p. 4; *see also* #19, Ex. B, pp. 25, 27).

Defendants note that plaintiff has another ongoing case, case number 3:06-cv-00477-LRH-RAM ("06-477"), which involves this same allegedly abandoned civil rights complaint. *See* #7, 3:06-cv-00477-LRH-RAM. In 06-477, plaintiff alleges that in August 2005, he was transferred to another institution, and that when his property arrived two weeks later, much of it was wet and ruined. *Id*. Plaintiff also alleges in 06-477 that the wet file incident caused him to abandon "three (3) 42 U.S.C. section 1983 lawsuits in draft form, nearly ready to file." *Id*. at 4. Defendants submit plaintiff's 06-477 written discovery responses in which plaintiff identifies his 06-477 abandoned civil rights claim exactly the same as he identifies his abandoned civil rights claim in the present case. *Compare* #19, Ex. F, p. 54 *with* #19, Ex. B, p. 27. The court finds this

---

[3] Plaintiff claims that this medical malpractice action was particularly egregious, and that he "fully and justifiably expected to be able to make a solid Eighth Amendment claim" from the same set of facts (#23, p. 8). Defendants correctly note that plaintiff was given numerous opportunities during discovery to inform defendants what his lost claims are, and that he consistently identified only a medical malpractice claim. That plaintiff now claims he would have also brought an Eighth Amendment claim is self-serving, and only occurred after defendants pointed out that a medical malpractice claim does not qualify as a lost claim under *Lewis*. The court also disagrees with plaintiff's contention that *Lewis* left the door open to other types of claims. Finally, even if the court gave plaintiff the benefit of the doubt and found that he had possibly lost an Eighth Amendment claim, plaintiff has presented no evidence, such as grievances or medical records, to support his contentions.

information relevant, not because plaintiff is prohibited from bringing two claims regarding the very same lost complaint, but to demonstrate that plaintiff, who admits in the 06-477 complaint that his 1983 complaint was "nearly ready to file" when it got wet, was able to re-create his civil rights complaint after the 2004 shakedown referenced in the present case. Because he was able to do so, the 2004 shakedown did not cause an "actual injury."[4]

Additionally, plaintiff testified that the statute of limitations for his allegedly abandoned civil rights claims did not expire until December 1, 2005 at the earliest (#19, Ex. B, p. 27). Therefore, plaintiff had more than one year from the time of the 2004 shakedown to the time the statute of limitations expired to re-create his civil right complaint. Finally, due to the lack of information and evidence regarding plaintiff's allegedly abandoned 1983 claims, the court is not in a position to determine whether plaintiff's underlying claims were non-frivolous. The court grants summary judgment as to count I.[5]

### 2. Count II

In count II, plaintiff again alleges that defendants violated his right to access to the courts when, sometime between September 1 and October 31, 2004, NDOC staff opened legal mail plaintiff had addressed to an attorney, but had not yet sent. *Id*. at 5. Plaintiff claims that a cover letter and exhibits supporting his habeas corpus petition were removed, thereby denying him the opportunity to file his habeas petition. *Id*.

Defendants again argue that plaintiff has failed to demonstrate actual injury (#19, pp. 10-

---

[4] This court does not express any opinion as to whether plaintiff incurred an actual injury as a result of the alleged incident with the wet papers in August 2005 in 06-477.

[5] Plaintiff cites two Eighth Circuit cases and argues that these cases stand for the proposition that simply taking, destroying or reading an inmate's legal papers without justification is an actual injury. *See* #23, (citing *Cody v. Weber*, 256 F.3d 764 (8th Cir. 2001) and *Goff v. Nix*, 113 F.3d 887 (8th Cir. 1997)). The court's review of these cases reveals that the Eighth Circuit stated that such actions "*can be* a constitutional violation" and that the taking of legal papers "will often (though perhaps not always) interfere with an inmate's right of access to the courts." *Cody*, 256 F.3d at 768 (citing *Goff*, 113 F.3d at 892). First, these cases are not Ninth Circuit precedent, and are only persuasive authority. Second, unlike the officials in *Cody* who had no justification for their actions, defendants in the present case had a justification for confiscating plaintiff's clippings because AR 711 defines clippings as contraband. Although the court holds below that this regulation is not reasonable as applied to clippings pursuant to the *Turner* standard, the court additionally grants defendants qualified immunity. Thus, *Cody* and *Goff* are not dispositive of the issue.

6

11). Defendants contend that any habeas petition in 2004 would have been futile because plaintiff was convicted in 1985, and, absent excusable delay, the statute of limitations would have expired. *Id*. at 11. Moreover, defendants argue that plaintiff has access to additional copies of his habeas documents; therefore, defendants' actions did not prevent him from filing his habeas action. *Id*.

      Plaintiff testified that at some point in 2004, he possessed three copies of his habeas evidence (#19, Ex. A, pp. 21 and 23). He stated that he mailed one copy to friends outside the prison for "safekeeping," that one was seized in the shakedown, and that the last copy was removed from an envelope that had a brass slip on it and was addressed to Terry Keyser-Cooper, a local Reno attorney. *Id*. Plaintiff claims that there were thirty-six documents in the envelope pertaining to his criminal trial (#19, Ex. B, pp. 31-33). He alleges that these documents supported his habeas claims that the prosecution failed to produce an exculpatory videotape, that the prosecution and the court had *ex parte* communications, that the prosecution gave drugs to the "purported victim," and that the Nevada Highway Patrol conducted an illegal search of his home in January 1981. *Id*. Without these documents, plaintiff contends that he is unable to "entice" an attorney to represent him because "a rational competent attorney is not going to waste his/her time and money," and these documents would have been "a solid place to begin." *Id*.

      The court concludes that plaintiff has failed to meet the *Lewis* standard. First, as in count I of his civil rights complaint, plaintiff admits that he was able to re-create his habeas petition by August 2005; thus, plaintiff was not prevented by the 2004 shakedown from filing his petition and did not incur actual injury as a result.[6] *See* #23, p. 10; *see also* #19, Ex. G, p. 58. Further, plaintiff's vague allegations, unsupported by *any* evidence, including an affidavit from plaintiff, do not create a genuine issue of material fact. The only evidence before the court that a habeas claim even existed is plaintiff's word for it. Plaintiff fails to state how the documents supporting his habeas petition came into his possession close to twenty years after he was convicted and

---

[6] The habeas petition is the subject of the same case the court referenced above, case number 3:06-cv-00477-LRH-RAM. Plaintiff alleges in 06-477 that his "writ of habeas corpus (draft) and supporting documents and backup copies" were also damaged by water and were not salvageable. Again, it is clear from this evidence that plaintiff was able to re-create his habeas petition after the September 16, 2004 shakedown. Again, this court does not express an opinion on the merits of 06-477.

7

sentenced to prison, or why he might be excused from the one-year statute of limitations for filing habeas petitions. Finally, the court notes that plaintiff himself testified that a copy of his habeas documents still exist, albeit, "outside of the prison."[7] The court grants defendants' motion for summary judgment as to count II.

### 3. Count III

In count III, plaintiff alleges that defendant MacArthur violated his Eighth Amendment right against cruel and unusual punishment. *Id*. at 6. Defendants argue that plaintiff failed to exhaust his administrative remedies as to count III (#19, pp. 16-17).

The Prison Litigation Reform Act of 1996 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2002). The exhaustion of administrative remedies is mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Id*. at 741. Case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id*. at 741, n.6 ("[w]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

---

[7] The court finds that plaintiff is disingenuous when explaining why he is unable to obtain a copy of the habeas papers he sent outside of the prison for safekeeping. Plaintiff testified that he cannot obtain a copy of the documents unless he has a lawyer because prison regulations do not allow a lay person to send privileged materials to prisoners (#19, Ex. A, p. 73). Plaintiff also testified that "if anyone else sends them to me, they simply disappear," but provides no evidence that this has occurred in the past. *Id*. Plaintiff then contends in his opposition that he is unable to obtain the papers because the individuals who have them either have no money to send the documents or have been non-responsive to plaintiff's requests (#23, p. 10). Plaintiff submits no proof of any of these explanations, such as a letter to the individuals, a response from the individuals that they do not have any money for postage, a grievance that the documents were sent to the prison and never arrived, or even his own affidavit to support these statements.

Finally, plaintiff alleges in the present case that after the 2004 shakedown and/or after the documents were confiscated from the legal envelope addressed to Ms. Keyser-Cooper, he was left without any copies of the habeas documents. Yet, in 06-477, plaintiff alleges that the habeas supporting documents were destroyed by water in August 2005. This implies plaintiff had a copy of the documents in his possession after 2004. Plaintiff cannot have it both ways.

8

Plaintiff argues that he filed informal, first-level and second-level grievances regarding his Eighth Amendment claim, but that the prison failed to respond to him within the required time frames (#23, pp. 2, 16). Plaintiff presents absolutely no evidence of this, such as copies of these grievances or even his own affidavit. A plaintiff may not simply rest upon his allegations and denials in the pleadings. *Anderson*, 477 U.S. at 248. Neither can plaintiff create a genuine issue of material fact merely by stating that he exhausted his administrative remedies without presenting evidence of it. *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (conclusory self-serving statements are insufficient to create a genuine issue of material fact). The court grants defendants' motion for summary judgment as to count III.

### 4. Count IV

In count IV, plaintiff alleges that defendants violated his First Amendment right to free speech during the September 16, 2004 shakedown when they removed "mostly literature and newspaper/magazine clippings" which had been previously received through authorized channels. *Id*. at 6A.

"In a prison context, an inmate retains those First Amendment rights not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). When a prison regulation allegedly restricts an inmates' First Amendment rights, the regulation is valid only if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine the reasonableness of the regulation, a court looks at four factors: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the rights that remain open to prison inmates;" (3) what "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and, (4) whether the "absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-90. "The first of these factors constitutes a *sine qua non*," see *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990), "[t]herefore, if a regulation is not rationally related

1    to a legitimate and neutral governmental objective, a court need not reach the remaining three
2    factors." *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005).
3         Plaintiff admits that AR 711 defines newspaper and magazine clippings as contraband
4    because they are "altered property;" however, he challenges the regulation as unconstitutional
5    (#19, Ex. A, pp. 5-6; *see also* #7, p. 6A).  Plaintiff argues that because the First Amendment
6    protects the newspapers and magazines from which he cut the clippings, there is no legal support
7    for the idea that this First Amendment protection disappears simply because an inmate chooses
8    to save something of interest from a publication and discard the rest (#23, p. 13).
9         Defendants claim that if inmates are permitted to alter newspapers and magazines, they
10   will begin to alter all of their other property and it will be difficult to distinguish between property
11   that can be permissibly altered, and altered property that constitutes a safety hazard (#19, pp. 12-
12   13).  Defendants provide no examples or proof of this contention.  There are a number of ways
13   that defendants can prevent inmates from altering other property – they can simply revise AR 711
14   to exclude magazine and newspaper clippings from the property alteration rule or they can
15   prohibit the alteration of specifically listed property that would become dangerous if altered.
16        Defendants next assert that AR 711's ban on altered property is reasonable because
17   newspaper and magazine clippings constitute a fire hazard and a safety concern.  *Id*. at 12.
18   However, defendants provide no reason or evidence as to why *clippings* from magazines and
19   newspapers constitute more of a fire hazard than whole magazines and newspapers, which
20   inmates are permitted to possess in their cells.  Additionally, the Ninth Circuit has rejected the
21   "fire hazard" justification as unreasonable in cases in which a prison has separate regulations to
22   control the amount of property in a prisoner's cell.  *Lehman*, 397 F.3d at 700 ("It is irrational to
23   prohibit prisoners from receiving bulk mail and catalogs on the theory that it reduces fire hazards
24   because the DOC already regulates the quantity of possessions that prisoners may have in their
25   cells").  Although defendants do not submit the particular page of AR 711 which sets out the
26   amount of property an inmate is permitted, it is clear from the first page of AR 711 and plaintiff's
27   testimony that the quantity of property an inmate may possess is regulated.  *See* #19, Ex. D, p 39.
28   Thus, as in *Lehman*, the fire hazard issue can be resolved through limits on the volume of

1  property.[8]

2  Defendants also argue that, aside from the "altered property" regulation, the seizure of
3  plaintiff's clippings was reasonable because the materials consisted of "literature on electronics
4  and similar subject matter," and "there is no inherent reason why an inmate serving a life sentence
5  would need to be in possession of such material" (#19, p. 2). Plaintiff responds that he does not
6  need an "inherent reason" to read articles in approved magazines, and that the length of his
7  sentence is irrelevant (#23, p. 3).

8  Plaintiff's clippings included information about "Y2K," backup, electric and portable
9  generators, water pumps, amateur radios, solar power, U.S. Naval Institute proceedings, water
10 heaters, batteries, wood stoves, marine safety and signaling equipment, auto-pilot information,
11 a scientific calculator, and a book on how to repair computers (#19, Ex. A, pp. 7, 8, 12; *see also*
12 #19, Ex. B, pp. 26, 28-30). Plaintiff testified that he has an interest in this kind of information
13 because before he entered prison, this was his "area of expertise," and that if he is released, he
14 plans to do something in this area again (#19, Ex. A, pp. 7-8). Plaintiff further states that he
15 taught an electronics class while in prison and assisted with some security issues while
16 incarcerated at Southern Desert Correctional Center (#23, pp. 13-14).

17 The court rejects the idea that the prison may constitutionally remove newspaper and
18 magazine clippings based on their content without proper justification. Defendants have neither
19 submitted evidence to support their statement that these materials represent "an inherent safety
20 risk within a correctional environment," nor have they identified that risk. To censor an inmate
21 based on the defendants' opinion that "there is no inherent reason why an inmate serving a life
22 sentence would need to be in possession of such material" is simply unreasonable. Such a
23 statement is akin to stating that an inmate who has an interest in skiing cannot read about skiing
24 or watch a show about skiing simply because the inmate will not ski while incarcerated. Absent
25 some explanation and evidence as to *why* this material constitutes a safety issue, defendants

---

[8] Plaintiff claims he was well within the permitted property limits and defendants do not argue otherwise.

11

1  cannot unilaterally prohibit literature based on its content.

2  Finally, defendants argue that even if the court determines that there was no safety
3  concern, the court should still defer to defendants' judgment to promulgate and enforce AR 711
4  as it relates to newspaper and magazine clippings (#24, p.11).  Courts are required to accord
5  deference to prison officials' assessments of their interests.  *Turner*, 482 U.S. at 84-85.
6  "Nevertheless, deference does not mean abdication.  Prison officials must "put forward" a
7  legitimate governmental interest to justify their regulation, and must provide *evidence* that the
8  interest proffered is the reason why the regulation was adopted or enforced."  *Walker*, 917 F.2d
9  at 386 (quotations and citations omitted) (emphasis in original).  Defendants argue that they
10 enforce their policy based upon their knowledge and expertise with respect to corrections, but
11 present no legitimate penological interest to justify their policy as applied.

12 The court concludes that AR 711's ban on altered property, as applied in this specific
13 situation, is not reasonable.  The court further concludes that defendants cannot censor the content
14 of reading materials without a legitimate penological reason.  However, defendants are entitled
15 to qualified immunity in this case, as set out below.

16 **5. Qualified Immunity**

17 When a constitutional violation occurs, law enforcement officers nonetheless are entitled
18 to qualified immunity if they act reasonably under the circumstances.  *KRL v. Estate of Moore*,
19 512 F.3d 1184, 1186 (9th Cir. 2008).  A qualified immunity analysis begins with a threshold
20 question of whether, based upon facts taken in the light most favorable to the party asserting the
21 injury, an official's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201
22 (2001).  If no constitutional right was violated, the court need not inquire further.  *Id*.  If a
23 constitutional violation has occurred, the court's second inquiry is to ask whether the law was
24 "clearly established" at the time of the violation.  *Id*.  This is a question of law for the court.
25 *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).  If the
26 court determines that the law was clearly established at the time of the violation, the final inquiry
27 is whether the official could nevertheless have reasonably, but mistakenly, believed that his or
28 her conduct did not violate the plaintiff's constitutional rights.  *Sloman v. Tadlock*, 21 F.3d 1462,

1467 (9th Cir. 1994).

Plaintiff testified that he previously litigated the clippings issue and that the prison settled with him. In case number 3:03-cv-00158-ECR-VPC, plaintiff challenged NDOC's clippings policy (#8, case no. 3:03-cv-00158). The court dismissed plaintiff's claim without prejudice because he failed to name the correct party (#27, case no. 3:03-cv-00158). Before plaintiff could file an amended complaint, the parties settled (#s 48 and 53, case no. 3:03-cv-00158). The terms of the settlement required that defendants return plaintiff's confiscated clippings, and also allowed plaintiff to:

> submit his proposed changes to Administrative Regulation 711 to Mr. Don Helling, Warden of Northern Nevada Correctional Center. Mr. Helling will then submit [plaintiff's] proposed changes to Administrative Regulation 711 to Director Whorton for the Nevada Department of Corrections. Finally, Mr. Helling will provide [plaintiff] with a memorandum, informing [plaintiff] that his proposed changes to Administrative Regulation were submitted to Director Whorton. [Plaintiff] is aware that his proposed changes to Administrative Regulation 711 are only suggestions and that there is no guarantee that they will be accepted by Director Whorton.

(case no. 3:03-cv-00158, #53, ¶ 2.A.).

Based on the court's dismissal of plaintiff's prior claim on procedural grounds as well as the court's acceptance of the settlement language, it is reasonable for defendants to have concluded that the court implicitly approved of NDOC's clippings policy. Thus, although the court finds today that defendants violated plaintiff's First Amendment rights through the application of AR 711 to clippings, defendants had a reasonable belief that their conduct did not violate plaintiff's constitutional rights. The court grants defendants' motion for summary judgment as to count IV based on qualified immunity.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1. In counts I and II, plaintiff failed to demonstrate that he suffered an actual injury with respect to defendants' 2004 confiscation of his legal papers;

2. Plaintiff failed to present evidence that he exhausted his administrative remedies as to count III;

3. Defendants violated plaintiff's First Amendment rights by confiscating plaintiff's

literature and magazine and newspaper clippings pursuant to a regulation that is not reasonably related to legitimate penological interests as applied to those particular circumstances; and

    4.    Defendants are entitled to qualified immunity as to count IV because they had a reasonable belief that their policy did not violate plaintiff's constitutional rights.

As such, the court recommends that defendants' motion for summary judgment (#19) be **GRANTED**.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#19) be **GRANTED**.

**DATED:** July 7, 2008

_____
**UNITED STATES MAGISTRATE JUDGE**